Corrington v. Pierce.

WASHINGTON CORRINGTON

v.

HIRAM PIERCE.

*Trespass—Boundary Line—Settlement by Survey—Breach of Agreement*

The breach of an agreement, entered into by several adjacent land owners, to accept a boundary line as located by a surveyor, by one of them, does not destroy the obligations existing between the others.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Peoria County; the Hon.
S. S. PAGE, Judge, presiding.

Mr. H. W. WELLS, for appellant.

Where two parties jointly enter into an agreement, and one
of them, in the presence and with the knowledge of the other,
does acts or makes statements to the party on the other side,
affecting their agreement, that such acts or declarations will
be taken as the statement of both unless some objections are
made or some dissent is expressed.

In this case there were repeated acts and declarations of
Cody, that he would not keep the agreement which he, with
Pierce, had entered into. His suit in forcible entry and detainer
was resumed and the trial had, in direct violation of the agree-
ment, and Pierce was present and knew all about it, but no
sign of dissent. Cody's subsequent settlement with Corring-
ton was made, Pierce being present and directly told it did
not include his land, and still no sign of dissent; two or three
weeks later, November 9th, Corrington went and built his
fence on the original line, and while this fence was being built
he, for the first time, asked Corrington if he was not going to
stand by that survey. Corrington replied, "No, you would
not stand by it." That was the first time Pierce intimated his
intention to abide by the contract to survey.

This is not a case where one of several parties attempts to
set aside a contract in which others have an equal interest.
This is a case where one, with the consent of all the others
jointly interested with him, refuses to be bound by a contract,
and the party on the other side acquiesces in that abandonment
for more than four months after the contract was in effect
abandoned. The suit, which was to be settled under the agree-
ment, went to trial July 1st; from that time until November
9th, no one of the parties made any pretense that the contract
had any binding force; all agreed, so far as declarations show,
that it was abandoned.

We insist that the appellee is, by his acts, estopped to claim any rights under the agreement to survey. It seems that Corrington has acted entirely different from what he would have done, had it not been for the acts and declarations of Cody, and entirely different from what he would have done, had Pierce given any sign of dissent from Cody's acts and declarations.

He went on with his lawsuit against Cody—he subsequently made another and different settlement with Cody, he afterward hauled material and began to build a fence on the old line, and then for the first time Pierce spoke to him and asked him if he was not going to abide by the contract. During this four months, Corrington, in good faith, and not suspecting any concealment on the part of Pierce, acted as though Pierce had agreed with Cody to abandon the survey.

The law of estoppel is stated in the following cases : Knoebel v. Kircher, 33 Ill. 308; Kinner v. Markey, 85 Ill. 96; Smith v. Newton, 38 Ill. 230.

Mr. ARTHUR KEITHLEY, for appellee.

Where a matter has been submitted to arbitrators by one on one side, and by two on the other, for an award, can one of the two, without consent of the other, either revoke the submission or after the award destroy its effect? Kyd on Awards, 30; Robertson v. McNeil, 12 Wend. 578.

It is the policy of the law to recognize and sustain boundaries established by agreement of the parties and to apply the doctrine of estoppel where the law and the justice of the case will warrant. McNamara v. Seaton, 82 Ill. 498.

C. B. SMITH, J. This was an action in trespass begun before a justice of the peace by appellee against appellant, for throwing down a fence erected by Pierce on land Corrington claimed to own. The plaintiff, Pierce, recovered a judgment for $25 before the justice, and Corrington appealed to the Circuit Court, where the plaintiff again recovered a judgment for $25, and Corrington brings the case to this court on appeal. The facts out of which this controversy grows are these :

Corrington owned eighty-five acres of land in section 28. Pierce owned several lots abutting Corrington's land on the east, and one Joseph Cody also owned one lot south of Pierce's lots, and also abutting Corrington's land. The same line which divided Corrington's and Pierce's land also divided Corrington's and Cody's land. Before the controversy between Pierce and Corrington began, it appears that Cody put his fence over on what Corrington claimed was his land, and thereupon Corrington sued Cody in forcible entry and detainer before a justice of the peace. At the time set for the trial of this case, a verbal agreement was made between Corrington on the one side, and Pierce and Cody on the other, that the dispute about the line should be settled by surveyors to be chosen by the parties, and that the surveyors should go on the land and survey it and locate the disputed line and that all three of the parties should be bound by the line as located by the surveyors. To accomplish this end the suit between Corrington and Cody was continued until after the survey should be made. The surveyors were selected and made the survey and located the line in pursuance of this agreement. After the line was thus located, Cody repudiated his agreement and refused to abide by the line located by the surveyors. Pierce was present and heard Cody refuse to abide by his agreement and was also present at the trial between the parties afterward, but took no part in the first conversation when Cody said he would not stand by the survey; nor did he take any part in the subsequent trial between Cody and Corrington. Shortly after the survey and after the trial between Corrington and Cody, Pierce informed Corrington that he was abiding by the survey and expected him, Corrington, to do the same thing and that he would build his fence on the line established by the surveyors, which he did in a short time, but not putting his fence as far, by an inch or so, as the line authorized him to do. Corrington thereupon tore down the fence placed there by Pierce. Corrington now contends that, inasmuch as Cody refused to stand by his agreement with the knowledge of Pierce, Pierce must also be held as repudiating it, and that he is therefore also released from any obligations under this con-

tract to Pierce. We can not concur in this view. Cody and Pierce had no joint interest in the line, nor in the lands abutting the line. Their interest in the line and land were several and entirely distinct, and we think each one of the parties were separately bound by their agreement and that neither one could destroy the obligations existing between the others without their consent. If they had been jointly interested in the land, it might be that the act of one would then bind the others. The authorities cited by appellant are unlike the case at bar, and can have no application to this case. The court instructed the jury in harmony with the views herein expressed.

There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*